UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER L. SCRUGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00398-JRS-MJD |
| | ) | |
| DESPLINTER Sgt., Sergeant, | ) | |
| BEDWELL C.O., Correctional Officer, | ) | |
| FENDER C.O., Correctional Officer, | ) | |
| | ) | |
| Defendants. | ) | |

## Order Granting Defendant Bedwell's and Fender's
## Motion for Summary Judgment

Indiana Department of Correction (IDOC) inmate Christopher L. Scruggs filed this 42 U.S.C. § 1983 action on September 10, 2018, against IDOC correctional officers Sgt. Seth Desplinter, Jason Bedwell, and Jacob Fender alleging they violated his Eighth Amendment rights by assaulting him on June 26, 2017. Dkt. 2. Discovery has concluded and defendants Officer Bedwell and Officer Fender seek summary judgment. For the reasons explained below, their motion, dkt. [115], is **granted**.

## I. Summary Judgment Legal Standard

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party

must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). The non-moving party bears the burden of specifically identifying the relevant evidence of record.  *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015). This is in part because summary judgment is the "put up or shut up" moment in a lawsuit. *Grant*, 870 F.3d at 568.

## II. Material Facts of the Case

Consistent with the legal standards set out above, the following facts are undisputed. *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014). That is, these statements of fact are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and any disputed evidence are presented in the light most favorable to the non-moving party. *Whitaker v. Wisc. Dep't of Health Servs.,* 849 F.3d 681, 683 (7th Cir. 2017).

Since 2017, Mr. Scruggs has been incarcerated at the Wabash Valley Correctional Facility (WVCF). Dkt. 117-1 at 10 (plaintiff's deposition). On June 26, 2017, he was in the SCU, Range 10, and assigned to cell 1001. *Id.* at 13, 24. Officer Bedwell, an IDOC correctional officer employed at WVCF, approached Mr. Scrugg's cell and inquired about toilet paper that Mr. Scruggs had "put

out the door." *Id.* at 31-32. Mr. Scruggs said that "it was for the camera." *Id.* at 32. Officer Bedwell

replied, "well, it looks like you trying to set a fire." *Id.* Mr. Scruggs responded, "that's been known

to happen." *Id.*

Mr. Scruggs further claims that Officer Bedwell then "came to the door and talking about

he'd take me out in the hallway and show me the southern way of life." *Id.* Mr. Scruggs refused to

go into the hallway. *Id.* at 33. Officer Fender arrived, took the toilet paper down, and then he and

Officer Bedwell left. *Id.* at 33; dkt. 118 at 8:37 (video recording of the range).

Officers Fender and Bedwell returned, but Mr. Scruggs again refused to come into the

hallway. Dkt. 117-1 at 34. Sgt. Desplinter arrived on the scene, and Mr. Scruggs refused to "cuff

up." *Id.* Sgt. Desplinter then sprayed a chemical agent through the door's cuff port toward

Mr. Scruggs. *Id.* at 36; dkt. 118 at 8:50.

Sometime later Sgt. Desplinter returned and again ordered Mr. Scruggs to "cuff up."

Dkt. 117-1 at 36; dkt. 118 at 8:59. Mr. Scruggs replied, "Go get the camera. You're all not taking

me in to no hallway." Dkt. 117-1 at 36. Sgt. Desplinter then sprayed another application of the

chemical agent toward Mr. Scruggs. Dkt. 117-1 at 36; dkt. 118 at 9:00.  The video recording depicts

a third application of the chemical agent, although Mr. Scruggs does not remember it. Dkt. 118 at

8:50, 9:00; 9:11; dkt. 117-1 at 40.

After the last application of the chemical agent, the officers returned to the door and told

him to "cuff up" because they have the camera. *Id.* at 36. Mr. Scruggs came to the cell door. *Id.*

Mr. Scruggs claims that Sgt. Desplinter then grabbed him, pulled his pants down, and sprayed the

chemical agent on his "ass cheeks and was talking about so you like it up the ass and all that shit

spraying me on the ass." *Id.* at 36.

Mr. Scruggs testified at his deposition that Officers Fender and Bedwell did not use any force against him:

> Q.     Let me get back to this incident, though. Can you tell me how Mr. Bedwell used excessive force against you on June 26, 2017?
> A.     No. I didn't – I think the – did they allow me to proceed with excessive force against him?
> Q.     Yes.
> A.     Okay. Well, then I think the court misread that because he was deliberate indifference or he was the cause of excessive force.
> Q.     But he didn't actually use any force against you; is that right?
> A.     No, not other than threat.
> Q.     Just to make sure that I'm clear, did he use any force against you?
> A.     No, none whatsoever.
> Q.     Did Mr. Fender use any force against you?
> A.     No.
> Q.     So your excessive force claim is only against Mr. Desplinter?
> A.     Desplinter and that Bedwell caused the excessive force.
> Q.     And why do you believe that Bedwell caused the [excessive] force?
> A.     Well, number one, he lied about me setting a fire or attempting to set a fire or threatening to set a fire. He also refused to go get me the sarge about my sack lunch. He also – yeah, that's about it.

Dkt. 117-1 at 46-47.

### III. Discussion

Officers Bedwell and Fender seek summary judgment because, they argue, there is no evidence that they personally inflicted any excessive force on Mr. Scruggs, evidenced by Mr. Scruggs' deposition testimony that neither officer used any force against him. Dkt. 116. Mr. Scruggs, in opposition to summary judgment, now takes issue with the Court's screening of his complaint and framing of the issues allowed to proceed, and injects failure to protect or intervene theories of liability against Officers Bedwell and Fender. Dkts. 121, 122, 123, & 124.

### A.     Claim Screened to Proceed

The claim authorized to proceed in this case is pled in Mr. Scruggs complaint as:

> Ground I: VIII Amendment rights violated when I was both assaulted and sexual [sic] assaulted on 6-26-17 for doing nothing more than requesting my

medically ordered food, and making a joke about a C.O. that he wasn't even suppose [sic] to hear, and or asking to file complaint about missing food.

Dkt. 2 at 4.

The factual allegations Mr. Scruggs presented to support the claim are in relevant part:

I. Assault/Sexually On 6-26-17 I was both assaulted and sexually assaulted by Sgt. Desplinter. . . .  Sgt. Desplinter and both C.O.s came back telling me to cuff-up to be taken into hallway cell. I then asked why I'm being taken off camera into the hall. I was told so they could search [the] room. So I said you can put me in the shower. He would not. He kept telling me the hall. . . . That's when I was pepper sprayed three times, the last time Desplinter reached his hand in my room after telling me he had the camera and I came to door to cuff up. He hooked the pepper spray can trigger on to my jumpsuit and pulled them down somewhat, put the spray nasal [sic] on my boxer and between my butt cheeks and sprayed O.C. into/onto my ass . . . . Then Desplinter and Bedwell, Fender went into my room and came out with a stinger which heats water . . . .  Also Desplinter was indifferent to my real fear of being attacked by Bedwell in hallway as he told me I would be.

*Id.* at 7.

The Court's screening order directed that "an Eighth Amendment excessive force claim against defendants Sgt. Desplinter, Officer Bedwell, and Officer Fender . . . shall proceed. No other viable claim is discerned in the complaint." Dkt. 10 at 4. The order also instructed Mr. Scruggs that he could notify the Court of any overlooked claims or defendants. *Id.* at 6. Mr. Scruggs then filed a motion to amend the screening order or for reconsideration. Dkt. 13. He sought reinstatement of his First Amendment free speech claim and wrote, in part, "that he was assaulted by the (3) defendants as to stop him from making a food complaint." *Id.* at ¶ 2. The First Amendment claim was the only one Mr. Scruggs addressed in his motion.

It is clear, therefore, that failure to protect or intervene claims have never been claims in this case. Two years have passed since the complaint was filed. The Pretrial Schedule deadline for amending pleadings expired eighteen months ago, Mr. Scruggs did not attempt to amend his complaint, and now has not shown good cause for doing so. *See* dkt. 25 at 3; Fed. R. Civ.

P. 16(b)(4). Discovery concluded almost one year ago. Dkt. 25 at 4. Therefore, to the extent that Mr. Scruggs now asserts these claims, they are untimely as well as not supported by the allegations in the complaint. The claim cannot be found in the complaint either expressly or through an inference by liberal construction.

The Court now turns to the merits of the motion for summary judgment.

### B.      Evidence Against Bedwell and Fender

Defendants Bedwell and Fender argue that Mr. Scruggs' deposition testimony that neither one of them used any force on him on June 26, 2017, is sufficient to warrant summary judgment in their favor. Mr. Scruggs opposes summary judgment because he believes Officer Bedwell is responsible for starting the events that led to the alleged assault by Sgt. Desplinter. He does not address how his suspicions connect Officer Fender to his claim of excessive force.

He believes, however, that Officer Bedwell "caused the excessive force" when "he lied about me setting a fire or attempting to set a fire or threatening to set a fire. He also refused to go get me the sarge about my sack lunch." *Id.* at 63.

Federal Rule of Civil Procedure 56 places an obligation on the summary judgment non-movant to come forward with evidence to demonstrate a genuine issue of material fact that precludes summary judgment. *Celotex Corp.*, 477 U.S. at 323; *Lisle v. Wellborn*, 933 F.3d 705, 719 (7th Cir. 2019). Mr. Scruggs has not met that obligation. In his statement of facts in dispute, he asserts legal theories and arguments that do not in any way point to material evidence. *See, e.g.,* dkt.124 at 2 ("the (2) defendants . . . cannot be held liable under the Eighth Amendment . . . ."; and "the Court erred in their Screening Order . . . ." In his statement of facts not in dispute, Mr. Scruggs repeats his allegations and theory of the case without citation to any evidence or item in the record.

*Id.* at 3.[1] Mr. Scruggs' affidavit in opposition to summary judgment simply repeats his theory of the case and makes legal arguments. Dkt. 122.

The Court finds that there is no evidence in the summary judgment record that defendants Officer Bedwell or Officer Fender committed any act of excessive force against Mr. Scruggs on June 26, 2017. Indeed, Mr. Scruggs' own deposition testimony provides the definitive evidence that these officers did not inflict any force whatsoever. *See* dkt. 117-1 at 46-47. To the extent Mr. Scruggs contradicts any of his deposition testimony with his assertions that Officers Bedwell and Fender were participants in the use of excessive force, this Court may disregard any such assertion unless the deposition testimony was "clearly a mistake." *See James v. Hale*, 959 F.3d 307, 315-17 (7th Cir. 2020) (discussing "sham affidavit rule" and noting that "every federal court of appeals permits a judge to disregard a "sham" affidavit – typically an affidavit that contradicts prior deposition testimony") (collecting cases) (citations omitted).

Finally, an observation about Mr. Scruggs' repeated assertion that Officer Bedwell was responsible for putting into motion the events that led to Sgt. Desplinter's alleged use of excessive force. Bypassing for the moment the question of whether, if true, such a theory would suffice to attach § 1983 liability to Officer Bedwell, there is no evidence to show that his conduct caused the series of events that led to the excessive force. Mr. Scruggs' repeated assertions are not supported by competent evidence, only Mr. Scruggs' suspicions. His suspicions are, at the most, plain "speculation and conjecture, which is not enough to survive summary judgment." *Lisle,* 933 F.3d

---

[1] In a filing titled "Designation of Evidence in Opposition to Motion for Partial Summary Judgment," Mr. Scruggs filed (1) his original complaint, (2) the screening order, (3) defendants' brief in support of summary judgment, (4) the transcript of his deposition, and (5) his affidavit. Only the deposition and affidavit are "evidence." Mr. Scruggs does not cite to any portion of the deposition, and the statements in his affidavit are either legal arguments or conclusory statements without other evidentiary support.

at 720 (citing *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016)); *see also Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018) (holding that "personal beliefs are insufficient to give rise to a genuine factual dispute").

For these reasons, the motion for summary judgment of Jason Bedwell and Jacob Fender, dkt. [115], is **granted**. Because one defendant – Sgt. Desplinter – remains in this action, no partial final judgment is necessary at this time.

### IV. Conclusion

Defendants Jason Bedwell and Jacob Fender's motion for summary judgment, dkt. [115], is **granted**. All claims against these defendants are **dismissed** with prejudice. No partial final judgment will issue at this time.

Defendant Sgt. Seth Desplinter did not seek summary judgment and his counsel acknowledge genuine issues of material fact remain. Therefore this action will be resolved by settlement or trial. The Magistrate Judge is requested to conduct a status conference at his earliest convenience to determine whether settlement is possible, and what remains to be done to be ready for trial. The Court will set final pretrial conference and trial dates by separate order.

**IT IS SO ORDERED**.

Date: 9/28/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Christopher L. Scruggs
957096
Wabash Valley Correctional Facility - Inmate Mail/Parcels
Electronic Service Participant – Court Only

David C. Dickmeyer
Indiana Attorney General
David.Dickmeyer@atg.in.gov

Winston Lin
Indiana Attorney General
winston.lin@atg.in.gov

Mollie Ann Slinker
Indiana Attorney General
mollie.slinker@atg.in.gov

By electronic delivery:
    The Honorable Mark J. Dinsmore
    United States Magistrate Judge